# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LORIE ANN PETER**                                                                                      **PLAINTIFF**

**V.**                              **No. 4:22-CV-00326-JM-ERE**

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security**                                                        **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file objections to the Recommendation. Objections should be specific and must include the factual or legal basis for the objection.

To be considered, objections must be received by the Clerk of the Court within fourteen days of this Recommendation. If no objections are filed, Judge Moody can adopt the Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.    BACKGROUND

On May 22, 2020, Ms. Lorie Ann Peter protectively filed an application for benefits due to a broken neck and back;[1] a metal plate in her neck; walking with a

---

[1] Ms. Peter wrote this on her application. However, there is no evidence that either is broken. Instead, the evidence shows that Ms. Peter suffers from cervical myelopathy resulting from a previous neck injury.

1

cane; a disc fusion between cervical vertebrae 1 and 6; and spinal cord damage in her cervical spine. *Tr. 232*.

Ms. Peter's claim was denied initially and upon reconsideration. At Ms. Peter's request, an Administrative Law Judge ("ALJ") held a hearing on August 3, 2021, where she appeared with her lawyer, and the ALJ heard testimony from Ms. Peter and a vocational expert ("VE"). *Tr. 25-65*. The ALJ issued a decision on August 18, 2021, finding that Ms. Peter was not disabled. *Tr. 7-24*. The Appeals Council denied Ms. Peter's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-6*.

Ms. Peter, who was fifty-one years old at the time of the second hearing, has her GED and no past relevant work experience. *Tr. 18, 30*.

## II.   THE ALJ's DECISION[2]

The ALJ found that Ms. Peter had not engaged in substantial gainful activity since May 22, 2022, the application date. *Tr. 12*. The ALJ concluded that Ms. Peter had the following severe impairments: degenerative disc disease and depression. *Id*. However, the ALJ found that Ms. Peter did not have an impairment or combination

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

According to the ALJ, Ms. Peter had the residual functional capacity ("RFC") to perform light work, except that she was limited to occasional overhead reaching, stooping, crouching, bending, kneeling, and crawling. *Tr. 14*.

In response to hypothetical questions incorporating these limitations, the VE testified that potential jobs available in the national economy were merchandise marker, photocopy machine operator, and routing clerk. *Tr. 63*. Accordingly, the ALJ found that Ms. Peter was not disabled.

### III. DISCUSSION

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).

The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.  Ms. Peter's Arguments for Reversal

Ms. Peter contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred by: (1) finding an RFC inconsistent with her impairments; (2) improperly evaluating her subjective complaints; and (3) improperly evaluating an applicable listing. After carefully reviewing the record as a whole, the Court recommends that this case be reversed and remanded to the Commissioner for further consideration.

### C.  Analysis

Although Ms. Peter asserts three reasons for reversal, they are all rooted in the ALJ's Step Two determination errors and its effect on the ALJ's remaining findings.

At Step Two of the disability analysis, an ALJ must determine whether the claimant has an impairment or combination of impairments that is "severe" and meets the duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id*. at § 416.920(c). The claimant must demonstrate that she has severe impairments, but the burden is not difficult to meet. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007).

Ms. Peter underwent surgery for cervical compression in 2014. In a consult, Dr. Hazem Ahmed noted that Ms. Peter "has been found to be severely myelopathic for a long time [with] several months of inability to walk freely and weakness in the upper and lower extremities." *Tr. 352*. The medical records indicate that Ms. Peter's "walking [was] significantly unsteady." *Tr. 353*. A doctor advised Ms. Peter that "the surgery goal is primarily to prevent further worsening of her condition" but he was uncertain as to whether surgery would improve the effects of her pre-existing cervical myelopathy. *Tr. 353*. On July 3, 2014, Dr. Ahmed performed a cervical corpectomy on C3 to C4, a diskectomy on C2 to C5, an interbody fusion with a case from C2 to C5, and a plate and screw fixation from C2 to C5. *Tr. 351*.

Ms. Peter's mobility issues appear to have continued following surgery. A physical therapist noted Ms. Peter's frequent falls and stated she would benefit from the use of an assistive device. *Tr. 357*. From 2014 to 2020, treatment providers repeatedly cited ongoing gait and balance issues as well as Ms. Peter's use of a cane. *Tr. 358, 359, 360, 365, 374, 552, 555, 558, 560, 561*. During a December 2020 mental evaluation, the examiner, Ms. Linda Hartfield, indicated that Ms. Peter "walked with an unsteady gait." *Tr. 467*. Ms. Hartfield wrote that she was "immediately aware of [Ms. Peter's] gait causing her to be unsteady on her feet" when Ms. Peter entered the office. *Tr. 468*.

Although Ms. Peter had neck surgery, she still has cervical myelopathy. In September 2017, Dr. Rohit Dhall noted that Ms. Peter "continues to be significantly disabled from the residual effects of myelopathy." *Tr. 620.* He assessed her with "[m]yelopathy (high cervical) with residual central pain and gait ataxia." *Id.* In October 2020, a consultative examiner found that her "walking [was] limited by neurological issues with legs" as well as reduced sensation and stocking distribution. *Tr. 456, 458.*

At the hearing, Ms. Peter testified that she suffered a cervical spinal cord injury years ago, which has casused numbness in her legs, loss of balance, and an unsteady gait. She said that she is "numb from the elbows to the fingers and the knees to the toes." *Tr. 32.* She often trips or stumbles and has, overall, bad mobility, requiring her to use a cane. *Id.* The medical records are replete with a history of cervical myelopathy, which can cause problems with loss of balance, trouble walking, and, as the disease progresses, shooting pain that originates in the neck and travels down the spine.[3] Yet, during the hearing, the ALJ expressed doubt about how Ms. Peter's cervical myelopathy would affect her ability to walk. *Tr. 45-46.*

In his written opinion, the ALJ continued to focus on the upper extremities, while ignoring Ms. Peter's complaints about her lower extremities. He noted:

---

[3] https://www.hopkinsmedicine.org/health/conditions-and-diseases/cervical-myelopathy (last visited on November 4, 2022).

> While the claimant continued to show signs of cervical myelopathy (Ex. 2F/6), her neurological assessments showed that her upper extremity muscle strength was good, reporting strength levels of a 5/5. (Ex. 7F/17). The claimant also exhibited normal range of motion in her shoulder . . . .

*Tr. 16*. The ALJ discounted an October 2020 examination, by Mark E. Larey, D.O., which found moderate limitations in walking, standing, lifting, and carrying, because, "while the claimant steadily report[ed] neuropathic pain in her lower and upper extremities, she also endorsed improvement in her strength post-surgery. (Ex. 4F/6; Ex. 7F/25)." *Tr. 17*. However, these two citations involve only upper extremities. Exhibit 4F/6 refers to impressions of the "cervical spine." Exhibit 7F/25 says, "Her neck is doing better. She had a couple of falls that aggravated it." *Tr. 514*. So, Exhibit 7F/25 appears to support Ms. Peter's claim about the effects of her cervical myelopathy more than it supports the ALJ's finding.

Despite Ms. Peter's testimony and the supportive medical record, the ALJ's opinion makes only one passing reference to Ms. Peter's cervical myelopathy, which he discounted based on a misunderstanding of cervical myelopathy's effects.[4] Ms. Peter presented sufficient evidence to support a finding that her cervical myelopathy constituted, at the very least, a medically determinable impairment ("MDI").

---

[4] In determining the RFC, the ALJ noted that Ms. Peter "continued to show signs of cervical myelopathy" but dismissed the condition because the "neurological assessments showed that her upper extremity muscle strength was good" and she had normal range of motion in her shoulders. *Tr. 16*. This finding ignores the alleged effects of the condition on Ms. Peter's lower extremities.

However, the ALJ never referenced the medical evidence related to Ms. Peter's cervical myelopathy, its effect on her lower extremities, or its significance in this case.

The ALJ's misunderstanding of the effects of Ms. Peter's cervical myelopathy ultimately tainted the RFC determination. The ALJ discounted the credibility of Ms. Peter's subjective complaints by focusing on medical records related to the upper extremity while ignoring the lower extremity issues. He relied on an October 8, 2020 consultative physical exam, which found that Ms. Peter "underwent a decompression surgery and cervical fixation with some improvement." *Tr. 13*. However, the rest of the sentence says: "but continues to be significantly disabled from the residual effects of myelopathy." *Tr. 620*. The same exam referenced "walking limited by neurological issues with legs" as well as "reduced sensation, stocking distribution, [and] pigeon-toe gait." *Tr. 456, 458*. Additionally, at the visit where the doctor found normal range of motion in the shoulder, he also referenced "more left shoulder pain," neck pain, and numbness. *Tr. 446-447*. Notably, someone can have full range of motion and still experience neurological pain and numbness.

Finally, nothing in the RFC accounts for the numerous references to balance, numbness, walking, and use of a cane. Apparently, the ALJ did not understand that cervical myelopathy, despite being a neck impairment, can cause lower extremity problems. As stated earlier, this apparent misunderstanding led to the ALJ

questioning Ms. Peter's credibility and categorically disregarding the medical evidence demonstrating the negative impact of Ms. Peter's cervical myelopathy on her lower extremities.

The ALJ bears the primary responsibility for assessing a claimant's RFC or residual functional capacity – that is, the most she can do despite the combined effects of all of her credible limitations, based on all credible evidence in the record. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). Here, the ALJ failed to reconcile his finding of light work and its walking/standing requirements with Ms. Peter's medically supported lower extremity limitations. "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 (Soc. Sec. Admin. Jan. 1, 1983). The relevant medical evidence does not support this finding, but rather supports a more limited RFC.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that and error at Step Two tainted the entire opinion. Accordingly, the ALJ's decision is not supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 4th day of November, 2022.

_____
UNITED STATES MAGISTRATE JUDGE